UNITED STATES v. PHILIPS CO. (No. 1789).[1]

1. CONSTRUCTION, PARAGRAPH K OF SECTION 3, TARIFF ACT OF 1913—APPRAISEMENT.

Under paragraph K of section 3, tariff act of 1913, authorizing the appraiser to use "all reasonable ways and means" in his power to "ascertain, estimate, and appraise" the actual market value and wholesale price of dutiable merchandise at the time of its exportation to the United States, in the principal markets of the country whence the same has been imported, the appraiser is justified in arriving at his conclusion by deducting from the value of the merchandise at the port the shipping and freight charges from the place where the shipment originated—the principal market for such merchandise—to the port. Such action is not an appraisement of the freight and shipping charges, but a convenient method of finding the value at the place where the shipment originated.—United States v. Spingarn Bros. (5 Ct. Cust. Appls., 2; T. D. 34002) distinguished.

[1] Reported in T. D. 37110 (32 Treas. Dec., 374).

2. CONSTRUCTION, PARAGRAPH I OF SECTION 3, TARIFF ACT OF 1913.

Where both importer and appraiser arrived at the market value by deducting inland freight and shipping charges from the value at the foreign port, and a greater deduction was made by the importer than by the appraiser, such action resulting in a larger appraised than entered value, the additional duty provided by paragraph I of section 3, tariff act of 1913, was justly imposed.

United States Court of Customs Appeals, March 26, 1917.

APPEAL from Board of United States General Appraisers, Abstract 40248.

[Reversed.]

*Bert Hanson*, Assistant Attorney General, for the United States.
*B. A. Levett* for appellees.

[Oral argument Feb. 15, 1917, by Mr. Hanson and Mr. Levett.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case consists of certain electric-light bulbs, which were dutiable at an undisputed ad valorem rate of duty under the tariff act of October 3, 1913.

The principal market of exportation of the merchandise was Eindhoven, Holland, but entry thereof was made upon invoices which stated the price of the merchandise f. o. b. Rotterdam. In order, therefore, to state the actual market value of the goods at Eindhoven, the importers at entry deducted certain sums from the Rotterdam price aforesaid, upon the claim that these sums represented the nondutiable freight and shipping charges incurred in the transportation of the goods from Eindhoven to Rotterdam. Accordingly the importers in their entry declared the net sum thus ascertained to be the actual market value of the goods at Eindhoven, the principal market of exportation.

The appraiser in passing upon the importations accepted the invoice statement as to the Rotterdam price of the merchandise, but disallowed a portion of the deductions which the importers claimed, as aforesaid, for nondutiable inland freight and shipping charges, and accordingly reported an actual market value in excess of that stated in the entry. Upon an appeal by the importers a single general appraiser also disallowed part of the deductions in question, although less than that disallowed by the local appraiser, and correspondingly increased the actual market value of the goods beyond the value stated in the entry. No appeal was taken from this appraisement.

The collector, acting upon the report of the general appraiser, assessed the appropriate rate of duty upon the market value so reported, and furthermore assessed so-called "additional duty" thereon, in supposed conformity with paragraph I of section 3, tariff act of October 3, 1913.

The importers protested against the assessment of "additional duty," claiming that only regular duty should have been assessed upon the merchandise. The protest reads as follows:

We hereby protest against your liquidation and assessment of additional or penal duty on certain incandescent lamps, more particularly described on entries and invoices by marks and numbers, imported by us in the vessels and on the dates named below on the ground that you have improperly assessed penal or additional duty. We claim that inasmuch as the advances made by the appraiser, the general appraiser, or the Board of General Appraisers grew out of disallowance of certain packing and freight charges, and did not apply to the *per se* value of the goods, no additional or penal duty is properly assessable and that only regular duty should have been assessed on the merchandise.

It may be noted at this point that the foregoing reference to an alleged disallowance of "packing charges" is manifestly incorrect, since no such disallowance appears in the record. It is conceded by both parties in their briefs that it was only a portion of the nondutiable inland freight and shipping charges which was "disallowed" by the appraiser, and this fact also appears in the stipulation of facts hereinafter copied.

The protest was submitted to the Board of General Appraisers and was sustained. The Government appeals.

The following is a copy of the provision for "additional duty" in paragraph I of section 3, tariff act of 1913, upon which the collector acted in making the assessment in question:

\* \* \* And if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total appraised value thereof for each 1 per centum that such appraised value exceeds the value declared in the entry: \* \* \*.

The facts in the case were presented to the board by a stipulation of the parties, which was duly entered of record, as follows:

It is hereby stipulated and agreed by and between the attorneys for the respective parties herein that the following facts may be accepted as proved:

(1) That the merchandise consists of incandescent lamps shipped from Eindhoven, Holland.

(2) That the town of Eindhoven, Holland, is the principal market for such lamps.

(3) That such lamps were invoiced at various prices, which prices were stated on the invoice to include packing and freight to Rotterdam, Holland, the port of shipment.

(4) That on entry certain deductions were made from the invoiced prices for inland freight and other charges as nondutiable items.

(5) That the examiner disallowed a portion of the freight and other charges.

(6) That the importers thereupon appealed to the single general appraiser and that said single general appraiser disallowed a certain portion of the freight charges.

(7) That the collector thereupon took regular and additional duty upon the value found by adding to the entered value the amount of freight disallowed by the single general appraiser.

(8) That the collector assessed additional duty on said value at a percentage found by deducting the entered value from said value and dividing the difference by the entered value.

(9) That the appraiser's action is noted on each invoice, as follows: "Appraiser advances to make market value by allowing only one-fourth of amount deducted by importers for freight and shipping charges."

The decision of the board upon these facts reads as follows:

If the facts in this case are correctly stated by the stipulation, and we must assume that they are, both the appraiser and the general appraiser exceeded their authority. Under the decision of the Court of Customs Appeals in United States v. Spingarn Bros. (5 Ct. Cust. Appls., 2; T. D. 34002) charges of every character are to be determined by the collector. In the case at bar it is perfectly apparent that the market value should have been determined at Eindhoven, Holland, which the stipulation states is the principal market for the commodity in question. In determining the market value of the merchandise at Eindhoven freight from there to the seaport is no more dutiable than the ocean freight or the freight on this side of the ocean, if any. This being the case, it was no function of appraisement to determine the amount of the freight, but this the collector should ascertain in the liquidation of the entry. In other words, it is the duty of the appraiser simply to determine the market value of the merchandise in the principal market of the country from whence it is imported at the time of exportation therefrom. It is the duty of the collector not only to determine the rate but the amount of duty to be paid. The appraiser having ascertained the market value and the collector deciding the rate of duty, any deduction made by the importers on their invoice from the invoice value would, if the same is not proper, be disallowed by the collector in the liquidation of the entry. If the freight charge, therefore, from Eindhoven to Rotterdam is greater than the importers paid, the collector could have very properly refused to allow the deduction made upon the invoice, but it was not a question for the appraiser or the general appraiser to determine. From this it will be seen that the merchandise was not advanced by the appraiser or the general appraiser. The appraised value, therefore, not exceeding the entered value of the merchandise, the provisions of paragraph I of section 3, tariff act of 1913, do not apply. The collector will therefore reliquidate the entry, omitting from the reliquidation the additional duty assessed by him by the application of paragraph I.

We are not able to agree with the board in its conclusion that the present question is ruled by the decision of the court in the Spingarn case. It was held in that case that in assessing duty upon ad valorem merchandise it was the office of the appraiser to appraise the *per se* merchandise at its actual market value at the time of its exportation to the United States in the principal markets of the country whence the same was imported, but that it was within the exclusive province of the collector to ascertain and fix the cost or value of the dutiable containers or coverings thereof, and all other dutiable costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to the United States. In other words, in the assessment of ad valorem merchandise, including the dutiable containers and coverings thereof, and the other dutiable costs, charges, and expenses incident to placing it in condition, packed ready for shipment to this country, the actual market value of the *per se* merchandise as it appeared in the principal markets of the country

of exportation was to be found by the appraiser, whereas the cost or value of the dutiable containers, coverings, and other costs, etc., incident to placing the *per se* merchandise in condition, packed ready for shipment to this country, was to be ascertained and fixed by the collector. United States *v.* Spingarn Bros. (5 Ct. Cust. Appls., 2; T. D. 34002). And in conformity with that decision the court has held in the recent case of United States *v.* Downing & Co. (7 Ct. Cust. Appls., 479; T. D. 37052), that under the provisions above copied from paragraph I of section 3, relative to so-called "additional duty," such duty may be assessed by the collector only in cases wherein the appraiser advances the entered value of the *per se* merchandise in order to meet the actual market value thereof, and that the provision is not applicable to advances made in respect to the cost or value of dutiable containers, coverings, or other costs when ascertained and fixed by the collector in the performance of his aforesaid duty.

In the present instance, however, the appraiser did not go beyond the jurisdiction which is assigned to him by the foregoing rules. He did not undertake to appraise the dutiable cost or value of the containers, coverings, or other costs, charges, or expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. It should be remembered that the foreign freight and shipping charges now in question were not ascertained or fixed by the appraiser as a basis for the assessment of duty thereon. These charges indeed were conceded to be nondutiable in character, and no duty was in fact ever assessed upon them or any part of them. They entered as mere incidents into the calculation whereby the *per se* merchandise itself was appraised by the appraiser, and in this particular the appraiser simply followed the method of calculation which the importers themselves introduced in their entry. The entry, as already stated, was based upon an invoice which stated the actual market value of the merchandise f. o. b. Rotterdam, whereas Eindhoven was conceded to be the principal market for such goods in Holland, the country of exportation. Accordingly a convenient method of ascertaining the actual market value of the goods at Eindhoven was simply to deduct from the invoice value aforesaid the amount of the nondutiable freight and shipping charges which were incurred in their transportation from Eindhoven to Rotterdam. This method was first adopted by the importers in their entry and was followed by the appraiser in his appraisement. It was, after all, simply a convenient and practical method of reaching the actual market value of the *per se* merchandise at Eindhoven, and bore no relation at all to the valuation of dutiable costs or charges such as should be ascertained and fixed by the collector under the rule in the Spingarn case. It may furthermore be assumed that the appraiser would have reached the same result in the appraise-

ment of the merchandise had he inquired directly concerning its value at Eindhoven instead of following the method of calculation adopted by the importers in the entry, and in that case the inland freight and shipping charges which are incidental to the present method of calculation would not have appeared in the record at all.

Paragraph K of section 3 of the tariff act of 1913 authorizes the appraiser to use "all reasonable ways and means" in his power to "ascertain, estimate, and appraise" the actual market value and wholesale price of dutiable merchandise, at the time of its exportation to the United States, in the principal markets of the country whence the same has been imported. This provision certainly allows the appraiser to take into consideration such factors as the foreign freight and shipping charges herein referred to, in so far as these may aid the appraiser in ascertaining the actual market value of the *per se* merchandise itself at its principal market of exportation.

Since, therefore, in the present case the several appraisers simply made use of allowable means in appraising the merchandise, and since the actual market value as appraised by the single general appraiser upon appeal was in excess of the entered value of the merchandise, the collector was justified in assessing "additional duty" thereon.

The decision of the board is *reversed*.