## MEYER *v.* UNITED STATES (No. 1860).[1]

CONSTRUCTION, PARAGRAPH I, SECTION 3, TARIFF ACT OF 1913—"MANIFEST CLERICAL ERROR."

Where the entry was made in gold instead of Mexican dollars, Mexican dollars being worth about half as much as gold, and there was no disclosure by the record that this error was made, there was no "manifest clerical error" within the meaning of that language in paragraph I of section 3, tariff act of 1913, and the paragraph forbids the assessment of duty "upon an amount less than the entered value."

### United States Court of Customs Appeals, March 20, 1918.

APPEAL from Board of United States General Appraisers, Abstract 41037.

[Affirmed.]

Walter Evans Hampton for appellant.

Bert Hanson, Assistant Attorney General (Thomas J. Doherty, special attorney, of counsel), for the United States.

[Oral argument Feb. 13, 1918, by Mr. Hampton and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The case shown by the record is as follows:

The protest in its essential statements was:

Protest is hereby made against your decision assessing duty on the value of $48 gold, United States, instead of $48 Mexican, on curios, and on other merchandise, covered by entries named below. The ground of objection under the tariff act of October 3, 1913, is that said merchandise was purchased at the total price of $48, Mexican, and was paid for at this rate to the Chinese merchant; that is to say, it was bought and paid for in silver and not in gold United States dollars. The amount of duty therefore should be ascertained by multiplying the rate on a valuation of $48 silver or Mexican.

The error occurred in making the entry as $48 United States gold. The United States of America has received more money than it is legally entitled to, and the jurisdiction of the Board of United States General Appraisers is invoked under paragraph N of section 3 of the act of October 3, 1913, amending the act of June 10, 1890.

It is further claimed that the local appraiser of merchandise at the port of New York did not appraise the goods in accordance with the statutes made and provided. He proceeded upon a wrong theory, and went outside of the statute. (Note paragraphs K, L, R of section 3 of the aforesaid act.)

It is further claimed that the board of classification has not only jurisdiction to review questions of error, but possesses the power to review the legality of the decision of the local appraiser in the premises, under paragraphs K, L, M, N, O, Q of said section 3.

It is further claimed that there is a manifest clerical error on this issue, manifest from all the papers and the record in this case.

---

[1] T. D. 37595 (34 Treas. Dec. 302).

The report of the collector answered these claims as follows:

The merchandise consists of certain Chinese bathtubs imported from Shanghai and entered at a value of $48 United States currency, which value was approved by the appraiser.

The entry, as appears by the papers, was made in the name of C. F. Meyer. The declaration describes Mr. Meyer as purchaser of the goods. The accompanying invoice is made by Hung On & Co. to Charles F. Meyer, and specifies the cost of the purchase at $48, which is the value stated in the entry. There was no appeal to reappraisement. The entry was made on April 19, 1916. It appears from the entry papers that a department reference was noted, and the appraiser ordered to state whether the appraisement was made in United States or Mexican dollars. Later on, on the 1st of September, the entry was liquidated, the Treasury Department having ruled on August 31 that as " the merchandise was entered as of the value of $48, United States; and as the record discloses no manifest clerical error in entering at this value, the department is prohibited by law from authorizing the assessment of duty on less than the entered value."

Protest was filed in the name of Mr. Meyer, and on the trial of this issue it appeared that the goods really were bought by Mrs. Frances Seaver in Hong Kong, and it is true that $48 was the price of the merchandise, but it was paid in Mexican dollars, which have about half the value of gold dollars. The answer to the protest states the judgment of the appraiser that the wholesale market value of the merchandise would be covered by $48 Mexican money.

The question presented on this record is whether the collector was in error in assessing duty on the entered value of the merchandise. It seems to us that the statute answers this question. Paragraph I of section 3 of the act of 1913 reads in part as follows:

The duty shall not, however, be assessed in any case upon an amount less than the entered value, unless by direction of the Secretary of the Treasury in cases in which the importer certifies at the time of entry that the entered value is higher than the foreign market value and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement, and the importer's contention shall subsequently be sustained by a final decision on reappraisement, and it shall appear that the action of the importer on entry was taken in good faith, after due diligence and inquiry on his part, and the Secretary of the Treasury shall accompany his directions with a statement of his conclusions and his reasons therefor.

A case of manifest clerical error may furnish an exception, but that the error here shown was not manifest clerical error is settled by repeated decisions of this court. United States *v.* Wyman (4 Ct. Cust. Appls., 264; T. D. 33485); United States *v.* Swedish Produce Co. (4 Ct. Cust. Appls., 223; T. D. 33437); United States *v.* Proctor (5 Ct. Cust. Appls., 44; T. D. 34091); Oberle & Henry *v.*

United States (7 Ct. Cust. Appls., 404; T. D. 36979); United States v. Nozaki (5 Ct. Cust. Appls., 286; T. D. 34471); and note particularly United States v. Rice (5 Ct. Cust. Appls., 288; T. D. 34472), which case is quite in point on all questions presented in this case.

A supplemental brief has been filed in answer to an inquiry made from the bench at the argument, which was apparently interpreted by the importer's counsel as implying that the court intended to intimate that the issue before the board must be precisely that put before the collector and that nothing could in *any* case be added for the consideration of the board. The practice of introducing testimony bearing upon the proper classification of merchandise, for instance, testimony of commercial designation, is too common to admit the supposition that any such intimation was intended. The effort was to draw the attention of counsel to the fact that the law above quoted restricted the power of the collector by prohibiting assessment in a case like this at anything less than the entered value, and that nothing could be made to appear which would affect or control that inhibition against his action and that this law is equally a restriction on the board and the court, and that neither can, in the face of this statute, direct the collector to do what he is prohibited from doing, and that the collector, having acted upon this direction and in compliance with the law, this law stands in the way of any power in the board or elsewhere to successfully assert that the goods were overassessed, in the absence of any showing of manifest clerical error. Ullman v. United States (1 Ct. Cust. Appls. 61; T. D. 31032), United States v. Rice, supra.

The present case would seem to be one of hardship. It is said, with much truth, that hard cases sometimes make bad law. The clear duty of a court, however, when it finds itself confronted with a case in which an apparent equity in the individual case is urged as a reason for departing from the clear legislative expression of the will of Congress, is to enforce the law as it finds it, leaving the remedy to be provided as to future cases by the legislative branch of the Government.

The Board of General Appraisers overruled the protest and in doing so reached the correct result, as we hold.

*Affirmed.*