UNITED STATES *v*. MANDEL BROS. (No. 1776).[1]

1. MAIL IMPORTATIONS, BOARD'S JURISDICTION OVER.

   The Board of United States General Appraisers has jurisdiction to review protests relating to mail importations.—General Electric Co. Cases (4 Ct. Cust. Appls., 287; T. D. 33494).

2. CONSTRUCTION, PARAGRAPH N OF SECTION 3, TARIFF ACT OF 1913—PLEADING—PROTEST FILED BEFORE LIQUIDATION.

   Paragraph N of section 3, tariff act of 1913, expressly inhibits the filing of a protest before liquidation. Such prematurely filed protest is ineffective.

3. CONSTRUCTION, PARAGRAPH N OF SECTION 3, TARIFF ACT OF 1913—BOARD'S JURISDICTION.

   The addition to the tariff law by paragraph N of section 3, act of 1913, of the words " or upon merchandise on which duty shall have been assessed " extends the jurisdiction of the Board of United States General Appraisers to all decisions of collectors of customs as to the rate and amount of duties whether or not the merchandise was imported and whether or not provision is made for its legal entry. It is any and every *decision* of a collector as to the rate and amount of duties that may be protested and reviewed, and not only such a decision as to imported or legally entered merchandise or as to goods for which a certain entry is by statute provided.

4. MAIL IMPORTATION—LIQUIDATION—PROTEST.

   A protest filed between the time of the payment at the post office of the *estimated* duties on a mail importation and the *liquidation* by the collector is premature and ineffective.

---

[1] Reported in T. D. 37051 (32 Treas. Dec., 265).

United States Court of Customs Appeals, February 28, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7960 (T. D. 36686).

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.
*Mandel Bros.* for appellees.

[Oral argument Feb. 9, 1917, by Mr. Hanson.]

Before MONTGOMERY, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This was a mail importation at the port of Chicago. Due notice of its arrival was sent the addressees, Mandel Bros., of that city, who, on March 1, 1915, called at the post office and delivered a paper entitled "*Original. Entry of merchandise imported through the mails,*" (signed) "Mandel Bros., per O. M. M." The paper bears stamp "Chicago P. O., paid March 6, 1915, customs mail," which was the date on which the importing firm paid the *estimated* duties. The paper further bears stamp "Custom House, Chicago, Ill. Paid March 18, 1915, Elmer Hill, cashier," and "*Liquidated,* March 19, 1915, H. T. S." Protest was filed March 17, 1915, and the sole question is, Was the protest premature and therefore ineffective in law? The Board of General Appraisers held the protest timely upon the theory that the entry was "liquidated" March 6, 1915, at the time of that payment. There is a dissenting opinion by Judge Sullivan.

While the prevailing conclusion of the board is reached and supported by divergent views, much stress is laid in all of the opinions upon the question of whether or not there is jurisdiction in the board to review protests relating to mail importations and what constitutes the "liquidation" against which protest in such cases must be made. We are of the view that these questions are *stare decisis* in this court. In United States *v.* General Electric Co. (4 Ct. Cust. Appls., 287; T. D. 33494), this court held the Board of General Appraisers had jurisdiction of such cases, and that the "ascertainment and liquidation of duties" the subject of such protests was the final such by the collector, which is certified by the naval officer at ports where there is a naval officer, under article 1034, Customs Regulations of 1908. The earlier payment was but of the estimated duties and the act of the collector an estimation and not a liquidation of the duties, subject to variation at final liquidation by the collector and certification of the naval officer. That liquidation took place March 19, 1915. The protest was filed March 17, 1915. The statute expressly inhibits a protest being filed before liquidation. Paragraph N of section 3, tariff act of 1913, reads:

N. That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, *or upon merchandise on which duty*

*shall have been assessed,* including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage) shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within thirty days after *but not before* such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within fifteen days after the payment of such fees, charges, and exactions, if dissatisfied with such decision imposing a higher rate of duty, or a greater charge, fee, or exaction, than he shall claim to be legally payable, file a protest or protests in writing with the collector, * * *. [Italics ours.]

It follows that this protest was prematurely filed and therefore ineffective.

Another view of the case leads to the same conclusion and deserves attention. The mail importation, the subject of United States *v.* General Electric Co. case, *supra,* was made under the tariff act of 1909 and the customs administrative act as therein amended. This importation was made under the tariff act of 1913 and the customs administrative act as amended by that act.

The whole argument urged in support of the claim that the board did not have jurisdiction of mail importations was and is based upon the asserted assumption that no entry, such as is required under the customs administrative act, is by law *required* as to such importations, and that such entry is a prescribed condition to the right of protest and appeal thereunder. Without expressing opinion upon that contention, it is here sufficient to point out that in this particular the jurisdiction of the board has been materially changed by the tariff act of 1913, paragraph N of section 3, by addition of the words "or upon merchandise on which duty shall have been assessed" to the language of the tariff act of 1909, subsection 14 of section 28. Italicizing said newly added words, the contrasted provisions may be more readily shown, the whole as hereinbefore quoted presenting the presently effective law. Undoubtedly this amendment was prompted by the decisions of the Supreme Court of the United States in "the Insular Cases," De Lima *v.* Bidwell (182 U. S., 1) and Goetze *v.* United States (182 U. S., 221), holding that the board had not jurisdiction where the collector assessed duty upon goods *not imported.* By this provision jurisdiction of the board is extended to all decisions of collectors of customs as to the rate and amount of duties, whether or not imported, and, of course, whether or not legal entry is therefor provided. It is any and every *decision* of a collector as to the rate and amount of duties, etc., that may be protested and reviewed, and not only such a decision as to imported or legally entered merchandise or as to goods for which a certain entry is by statute provided. Wherefore, this appeal being from a decision of a collector of customs as to the proper rate and amount of import

duty assessed thereupon, jurisdiction of the board attaches without further essential qualification to confer that jurisdiction.

Mail importations such as this afford appropriate examples of the amplitude of the amended law. The only jurisdictional inquiry is, Does the protest challenge the decision of a collector of customs as to "merchandise on which duty shall have been assessed"? The collector having assumed jurisdiction by such decision and assessment, and protest having been made under the amendment of 1913, stated jurisdiction is vested in the board to determine the validity of that decision and assessment. The particular issue, the timeliness of the protest, being the same, it follows that the board erred.

*Reversed.*