(C. D. 921)

Matson Navigation Co. *v.* United States

United States Customs Court, Third Division

(Decided May 2, 1945)

*Lawrence & Tuttle* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before Cline, Keefe, and Ekwall, Judges

Keefe, Judge: The plaintiff seeks to recover duties paid upon certain bottles containing wines withdrawn from warehouse and laden under customs supervision upon vessels as ships' supplies. It is conceded that duty was not assessed upon the wines. The shipment consisted of 45 cases of wines in bottles imported from Germany and entered for warehouse on February 27, 1939. Duty was paid on March 23, 1939, and the entry was liquidated on April 5, 1939. One of the cases in question was withdrawn from warehouse on March 30, 1939. Another was withdrawn on April 8, 1939. Protest was filed

on May 29, 1939, against the assessment of duty and thereafter the remaining cases were withdrawn from warehouse.

The evidence discloses that the bottles containing the wines were withdrawn as ships' supplies under the provisions of section 309 (a), as amended by the Customs Administrative Act of 1938, in accordance with the regulations, the cases being laden upon the vessels under customs supervision and affidavits received to the effect that the wines were consumed on board and not relanded from the vessels.

The plaintiff contends that the right of action arose upon payment of the duty and not when the entry was liquidated; and that if the date of liquidation is to be used as a basis for fixing the time within which protest may be filed, the importer would be without a remedy as to the collector's assessments upon merchandise withdrawn from warehouse 60 days after liquidation for purposes other than for consumption. The Government contends that the protest should be overruled on the ground that the plaintiff has failed to make out a *prima facie* case.

Three different situations exist here. First, a withdrawal was made *after* payment of duty but *before* liquidation of the entry. The protest before us was filed within 60 days of the withdrawal and the liquidation, but more than 60 days after payment. Second, a withdrawal was made *after* the duty was paid, and *after* liquidation of the entry. Here also the protest was filed within 60 days of the withdrawal and the liquidation, but more than 60 days after payment. Third, the withdrawals were made *after* payment of the duty and *after* the entry had been liquidated. The protest was filed *before* the withdrawal of the merchandise, and within the 60-day period after liquidation, but more than 60 days after the payment of duty.

We are unable to agree with the plaintiff that the right of action arose when the duty was paid on March 23. The payment of estimated duties has been held not to govern the time for filing of protests. See *United States* v. *Mandel*, 7 Ct. Cust. Appls. 476, T. D. 37051, and *United States* v. *General Electric Co.*, 4 Ct. Cust. Appls. 287, T. D. 33494.. If the time for filing of protests were to begin at the time of payment, the period would commence to run before the new facts permitted a change of dutiable status in respect to the withdrawals.

In considering the time applicable to the filing of protests in similar situations we find that in *Taylor* v. *United States*, 11 Ct. Cust. Appls. 15, T. D. 38636, our appellate court stated:

* * * One of the well-settled principles * * * is, that where goods are in bond perforce of warehouse entry and the duties unpaid, the right to protest does not arise until the withdrawal of the goods from bond where a different state of law or facts exist at the time of withdrawal from that existing at the time of the original liquidation. In other words, stated as a concrete principle rather than a definition of enumerated rights, it seems to be well established that where the law or the facts of the case postpone the final or possible final determination

of the rate or amount of duty upon goods in bond until withdrawal, the importer's right to protest does not arise or commence to run until withdrawal. Protests filed prior to such time and protests filed beyond the statutory time thereafter are not timely.

Where the law or the facts are not changed, however, the importer's right of protest is limited to 60 days from the collector's liquidation even though the goods were in warehouse at that time. See *Hiram Walker & Sons, Inc.* v. *United States*, 25 C. C. P. A. 189, T. D. 49293.

In the case of *United States* v. *Mexican Petroleum Corp.*, 28 C. C. P. A. 90, C. A. D. 130, certain imported oil in drums was withdrawn from warehouse as ships' supplies before the collector had liquidated the entry. An internal revenue tax upon the oil, under the provisions of the Revenue Act of 1932, was assessed on liquidation. Subsequently, the collector demanded payment of the tax and the importer protested within 60 days of the demand but more than 60 days after the withdrawal of the merchandise from warehouse and liquidation of the entry. Our appellate court held that since the protest was filed more than 60 days after liquidation it was untimely as the liquidation had become final and conclusive against all parties; that the collector had merely made a demand for payment of the tax based upon a prior liquidation; and that such demand was not a decision or exaction against which a protest may be filed.

There, it is clear that the circumstances of withdrawal gave rise to a change in the taxable status of the merchandise as it existed at the time of entry, but the entry had not been liquidated before withdrawal, and, on liquidating the entry, the collector failed to consider any changed taxable status. Therefore, the facts existing at the time of withdrawal also existed at the time of liquidation and when the collector ignored them in his liquidation, protest should be filed within the statutory time after his decision as evidenced by the liquidation.

Under the principle announced in the foregoing authorities, the time for filing protests against the collector's assessment of duty upon goods in warehouse is limited to 60 days from liquidation, except where the law or the facts delay the final determination of the rate or amount of duty until withdrawal, and then protests are timely if filed within 60 days after withdrawal. When withdrawn for a purpose which under the law institutes a change in the facts, protests filed prior to such change would be premature, and protests filed more than 60 days after such change would be too late. In cases where protests are held timely when filed within the statutory time from the date of withdrawal, however, a liquidation is requisite prior to withdrawal.

Applying these principles to the facts at hand, the protest was filed within the statutory time as to the withdrawal of March 30, but as the entry was liquidated after withdrawal, to wit, April 5, the time for filing protest commenced to run from that date rather than the

date of withdrawal. The protest was filed within the statutory time as to the withdrawal of April 8, the withdrawal having been made after liquidation, and the time for protest commenced to run from the date of withdrawal, as that date instituted the changed facts giving rise to a protest. However, the protest is held to be premature as to all of the withdrawals of the merchandise from warehouse occurring after liquidation and after the protest was filed, inasmuch as the facts upon which the protest was based occurred after the protest was filed.

As to the merits of the case, we are of the opinion that it is on all fours with *Atlas Marine Supply Co.* v. *United States*, 29 C. C. P. A. 20, C. A. D. 165, where our appellate court held that as the oil contained in drums withdrawn from warehouse was embraced in the term "supplies," as that term is used in section 309 (a), because of its withdrawal for a particular use, the taxable status of the drums containing such oil must be determined upon the same basis. As to the disposition of the drums the court stated:

\* \* \* We think they were ships' supplies when delivered, filled, on board the vessels, and that what became of them thereafter is immaterial, so far as this case is concerned, it being established that they were not relanded from the vessels.

As in the case before us, the evidence there of the drums not being relanded consisted of declarations appearing on the warehouse withdrawals that they would not be relanded in the United States.

For the reasons stated, judgment will be entered in favor of the plaintiff in respect to two cases withdrawn from warehouse, one on March 30, 1939, and the other on April 8, 1939. As to all other merchandise, the protest, being untimely, is hereby dismissed. The collector is directed to reliquidate the entry and make refund accordingly.