BEFORE THE THIRD DIVISION, NOVEMBER 23, 1945

**No. 50703.**—Protest 102122–K of Lansen-Naeve Corp. (New York).

EKWALL, Judge: It is claimed in this case that because of a clerical error the importer of certain pieces of musical works was charged an excessive amount of duty. The shipment consisted of 6,480 pieces invoiced at 2 Swiss francs each. However, the importer added to his invoiced value in order to make market value an amount which is stated as follows:

6480 pcs: MUSICAL WORKS 1/18   SW. FR. 2.50 ea—SW. FRS. 13608.00.

The appraiser checked the summary sheet under the column headed "Appraised" which indicates that "(a) the appraised value agrees with the entered value as represented by the information set forth on the invoice and in any importer's notations endorsed thereon or attached thereto." In view of this check mark the liquidation was based on a value of 2.50 francs per unit.

The plaintiff introduced testimony in an attempt to show that the entry at Sw. Fr. 2.50 each was because of a clerical error, and that it was the importer's intention to enter at a unit value of Sw. Fr. 2.10 each. The manager of the import traffic department of the plaintiff corporation testified that he supervises all customs entry figures on the customs entries and sees that they are put through and passed. In the instant case he had charge of making the entry, the entry paper being typed by one of the clerks under his supervision. Before making entry, he applied to the appraiser for information as to the correct dutiable value of the merchandise which was given him as Sw. Fr. 2.10 each. This testimony was substantiated by a memorandum received in evidence as exhibit 1, which consists of a letter to the appraiser on a printed form in which information is requested as to the latest information on market value. On this form in the column headed "Appraiser's Information," we find the amount "2.10 Sw. fcs." and the stamp "Examiner J. J. Quinn." There was also offered and received in

evidence as exhibit 2 a work sheet which the testimony shows to be in the hand-writing of the import traffic department manager which is as follows:

Importer enters to make FMV
6480 Pcs Fcs 2.10 each=Sw. Fcs.    13608. 00
Instead of as invoiced          12960. 00

Imp adds to make FMV SW Fcs.    648. 00

The witness testified that he gave this to his clerk and instructed him to type the entry in accordance with the figures shown on the entry; that said clerk's duties consisted of merely copying that on the typewriter; that he had no discretion or authority to change any of the figures nor was he entrusted with using his judgment as to the manner in which the entry should be made. When the entry was typed the witness glanced over it and affixed his signature without noticing that the typist had used the figures 2.50 instead of 2.10.

There appears on the yellow typewritten sheet above referred to the following notation in red ink:

Should read
2.10 fcs. ea.
Noted
JJQ

These are the initials of the Government examiner who at the time of the hearing was no longer living. It was agreed at the hearing that the portion "Noted J. J. W." is in the handwriting of Examiner Quinn, but as to the portion "Should read 2.10," it was not known who put those words on, although it was agreed that they may have been explanatory after the appraisement was made.

The Government at the hearing stated its position to be that set forth in the collector's letter of transmittal, which is part of the official file. We find the collector's position to be that the merchandise was entered at a unit price of 2.50 francs and was so appraised plus certain dutiable charges as invoiced. The collector cites the appraiser's check on the summary sheet as indicative of his agreement with the entered value. It is further stated in this memorandum that the contention of the importer that he intended to enter at 2.10 francs per unit is borne out by the extension which is based on the former figure. The memorandum then continues:

Invoking section 520 (c–1), upon which the importer evidently relies for relief, would serve no useful purpose as the liquidation based on the appraised value would have to stand (section 503 (a), even though a reduction in the entered value was authorized by the Commissioner.

Section 520 (c–1), *supra*, as amended, authorizes the Secretary of the Treasury to reliquidate an entry to correct a clerical error, notwithstanding a valid protest was not filed, and has no application to the instant situation.

Section 503 (a) provides (with an exception not here pertinent) that "the basis for the assessment of duties on imported merchandise subject to ad valorem rates of duty shall be the entered value or the final appraised value, whichever is higher."

The court is of the opinion and so finds that the appraiser's check on the summary sheet, in the light of the information furnished by the appraiser to the importer (exhibit 1) (that the market value according to his latest information was 2.10 Swiss francs), indicates that he understood the extension to be correct at that value and that he appraised the merchandise at 2.10 Swiss francs per unit. The testimony clearly sustains plaintiff's claim that the mistake in copying 2.10 as "2.50" on the yellow sheet above referred to in which the importer added to make market value was an error made by one who had no authority to change the figures and on whom no duty devolved to use judgment in the matter. Therefore,

under the decisions, such mistake constituted a clerical error within the meaning of the statute. *Yamada* v. *United States*, 26 C. C. P. A. 89, T. D. 49628; *McQuillan* v. *United States*, 18 C. C. P. A. 215, T. D. 44401; *United States* v. *Wyman & Co.*, 4 Ct. Cust. Appls. 264, T. D. 33485.

We therefore find that the claim of the plaintiff should be and the same hereby is sustained.

Judgment will be rendered accordingly.